IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSICA ELAINE WOLFE            :        CIVIL ACTION
                                :
        v.                      :
                                :
JEFFREY A. BEARD, et al.        :        NO. 10-2566


MEMORANDUM

McLaughlin, J.                              December 9, 2010


        The plaintiff, Jessica Elaine Wolfe,[1] is a self-
described male-to-female pre-operative transsexual who is an
inmate at the all-male State Correctional Institution at
Graterford, Pennsylvania ("SCI Graterford").  In her pro se
complaint, the plaintiff asserts nine claims for relief against
nine officials employed by the Pennsylvania Department of
Corrections ("DOC"), including six claims under 42 U.S.C. § 1983
for violation of her constitutional rights.  The plaintiff's
claims arise out of events that have occurred during her
incarceration at SCI Graterford.

        The defendants filed a motion to dismiss under Federal
Rule of Civil Procedure 12(b)(6).  The plaintiff opposed the

--------------------------------------------

        [1]The plaintiff's legal name was changed from James Elliott
Wolfe to Jessica Elaine Wolfe.  Consistent with the practice of
this Court in prior cases involving this particular plaintiff,
the Court will refer to the plaintiff in the feminine form.  See,
e.g., Inmates of the Pa. Dept. of Corr. v. Corbett, 484 F. Supp.
2d 359, 360 n.1 (E.D. Pa. 2007).

motion.[2]  For the reasons stated below, the Court will grant the
defendants' motion to dismiss in part and will deny it in part.


I.   Facts as Alleged in the Complaint

          In evaluating a motion to dismiss under Rule 12(b)(6),
a court must accept all well-pleaded facts as true, and must
construe the complaint in the light most favorable to the
plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009).[3]

          The plaintiff's complaint is laden with factual
allegations surrounding events at SCI Graterford, but the
plaintiff does not link the allegations to her substantive

_____

          [2]The plaintiff did not file an opposition brief, but rather
filed two additional motions.  The plaintiff's first motion,
titled "Motion to Execute the Proceedings," consists of arguments
opposing the motion to dismiss, and will therefore be treated as
the plaintiff's opposition.  The plaintiff's second motion,
titled "Petition de Droit," repeats and clarifies allegations
from her original complaint.  In an order dated November 11,
2010, the Court noted that it would consider the allegations
contained therein when deciding the present motion.

          [3]When evaluating a motion to dismiss, the court should
disregard any legal conclusions.  The court must then determine
whether the facts alleged are sufficient to show that the
plaintiff has a "plausible claim for relief."  Fowler, 578 F.3d
at 210.  If the well-pleaded facts do not permit the court to
infer more than the mere possibility of misconduct, then the
complaint has alleged, but it has not shown, that the pleader is
entitled to relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949
(2008).  Although pro se filings are entitled to liberal
construction, a pro se plaintiff must still satisfy the Rule 8
standard.  See Zilich v. Lucht, 981 F.2d 694, 694-96 (3d Cir.
1992).

counts.  In an effort to clarify the plaintiff's claims, the
Court held an on-the-record telephone conference with the parties
on October 28, 2010.  Based on the complaint and the plaintiff's
clarifications thereto, the Court will discuss the allegations
that are relevant to the substantive claims.  Because few of the
plaintiff's allegations contain dates, the Court will present the
allegations in the order in which they appear in the complaint.

The DOC has failed to provide the plaintiff, a
professionally diagnosed pre-operative transsexual,[4] with gender
and body-type appropriate clothing.  As a consequence, the
plaintiff has suffered "body disfigurements" and "physical,
psychological injuries."  Compl. ¶ 23.  Moreover, notwithstanding
the plaintiff's legal name change, the Superintendent at SCI
Graterford, Michael Wenerowicz,[5] has maintained the plaintiff's
former name on her prison records.  Compl. ¶ 25.

In addition, the plaintiff has been subject to full-
body strip searches by male guards.  During these strip searches,
male guards have elevated the plaintiff's breasts and touched her
nipples.  These searches have been condoned by Graterford

---

[4]Pursuant to a settlement with the DOC in 2002, the prison
provides hormone treatment to the plaintiff.  Tr. of Telephone
Conference on October 28, 2010 (hereinafter "Tr."), at 18-19.

[5]The complaint names David DiGuglielmo as the SCI Graterford
Superintendent.  However, Mr. DiGuglielmo has since retired and
was succeeded by Mr. Wenerowicz.  Defs.' Mot. at 4 & n.6.  The
plaintiff clarified that she intended to name both defendants.
Tr. at 32.

supervisors.  Compl. ¶ 31.

On August 4, 2005, the plaintiff was victimized and her property was seized when a "Sergeant and four guards" attacked the plaintiff while she slept.  Several guards dragged the plaintiff out of bed, stripped her naked and held her against the wall while other guards seized her law books and Uniform Commercial Code forms.  Compl. ¶ 33-34; Pl.'s Pet. de Droit ¶ 4.

The plaintiff was again victimized upon her return to SCI Graterford after a Court appearance on October 21, 2009.  While she was awaiting intake, Sergeant Andre Zimmer left the plaintiff in a sealed van for over an hour, during which time she endured hot temperatures and was not provided with fresh air, food, water, or restroom access.  When the plaintiff was unloaded from the van, still handcuffed, Mr. Zimmer grabbed the plaintiff by the neck and smashed her face into a metal window frame, while ordering her to spread her legs so that he could conduct a body search.  Mr. Zimmer then seized the plaintiff's property, which consisted of a tupperware bowl containing the plaintiff's medications.  The plaintiff was deprived of her medications for four days.  Compl. ¶ 39-41; Tr. at 6, 29-30.

The plaintiff subsequently filed a grievance against Mr. Zimmer, for which she faced retaliation.  The plaintiff was employed at a paint shop in the prison, and when her employer learned that she had filed a grievance, he petitioned to remove

the plaintiff from employment or to have her wages reduced. However, the plaintiff was ultimately able to keep her job. Compl. ¶¶ 45-46. Subsequently, the plaintiff's Unit Manager assigned the plaintiff to a library job that she had previously requested, but which had been unavailable. The librarian at the plaintiff's new job petitioned to have the plaintiff removed because she was transsexual. However, the plaintiff ultimately "recovered the job and all lost wages." Compl. ¶¶ 46-47; Tr. at 9-10. The plaintiff subsequently filed additional grievances.

The plaintiff was later informed that her new Unit Manager, Sylvia Pallott, was assigned to investigate the grievances she had filed. The plaintiff was called into Ms. Pallott's office to discuss her grievances. Compl. ¶ 48; Tr. at 12-13. A few weeks later, the plaintiff was again called into Ms. Pallott's office where she was informed that she would be transferred to a new cell. Whereas the plaintiff had been in a cell within twenty feet of the officer's station and the showers for over fourteen years, her new cell was located at the back of the lower tier of cells. Although the stated reason for the transfer was that the plaintiff was occupying a double-inmate cell by herself, the plaintiff's new cell also contained two beds. Tr. at 12. From her new cell, the plaintiff faces a long walk to the showers, where she is on display and suffers yelling and slurs. Tr. at 11.

After informing the plaintiff of her cell transfer, Ms. Pallott directed the plaintiff to move all of her belongings. Although the plaintiff informed Ms. Pallott that her medical conditions precluded her from lifting more than five pounds, Ms. Pallott indicated that the plaintiff would have to move everything by the next morning. While the plaintiff was moving her belongings, her mattress fell upon her, causing injuries that required medical attention. Compl. ¶¶ 50-51.

The plaintiff filed a complaint on June 28, 2010 against nine defendants.[6] In her complaint, the plaintiff asserts nine substantive counts.[7] In Count I, the plaintiff asserts a claim under 42 U.S.C. § 1981. In Counts II through VII, the plaintiff asserts claims under 42 U.S.C. § 1983 for violations of her constitutional rights. In Count VIII, the plaintiff asserts a claim under 42 U.S.C. § 1987. Finally, in Count IX, the plaintiff asserts a claim under 42 U.S.C. § 13981, formerly a part of the Violence Against Women Act of 1994. For the reasons that follow, the Court will grant the defendants'

---

[6]The defendants are: Jeffrey Beard, former Secretary of the DOC; James Barnacle, Director of the Office of Professional Responsibility; Dorina Varner, the Chief Grievance Coordinator; David DiGuglielmo, the former Superintendent; Michael Wenerowicz, the new Superintendent; Francis Field, a Major; Sylvia Pallott, the plaintiff's Unit Manager; Jeffrey Bender, a Lieutenant, and Andre Zimmer, a Sergeant.

[7]The plaintiff asserts each count against all nine defendants.

motion to dismiss in part and deny it in part.

II.  Analysis

    A.  Count I: 42 U.S.C. § 1981

       In Count I of the complaint, the plaintiff asserts a
claim under 42 U.S.C. § 1981 against all defendants for violation
of the "Writers and Authors Exclusive Rights Clause" located in
Article I, Section 8 of the United States Constitution.[8]  The
defendants argue that this claim must be dismissed because § 1981
claims cannot be brought against state actors.

       The Court will grant the motion to dismiss as to Count
I, because it agrees that no private cause of action lies against
a state actor under § 1981.  Instead, "the express cause of
action for damages created by § 1983 constitutes the exclusive
federal remedy for violation of the rights guaranteed in § 1981
by state governmental units."  McGovern v. City of Phila., 554
F.3d 114, 120-21 (3d Cir. 2009) (quoting Jett v. Dallas Indep.
Sch. Dist., 491 U.S. 701, 733 (1989)).  There is no dispute that
the defendants, all employed by the Commonwealth, are state
actors.  See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935

_____

    [8]None of the factual allegations in the complaint references
the plaintiff's rights under Article I, Section 8 or how those
rights were violated.  The plaintiff has not clarified this claim
in subsequent submissions to the Court.

n.18 (1982).  Accordingly, the plaintiff's § 1981 claim must be
dismissed.


B.    The § 1983 Claims

The plaintiff asserts six separate claims under 42
U.S.C. § 1983 in Counts II through VII of the complaint.  For the
following reasons, the Court will grant the motion to dismiss as
to Counts II, III, V, and VII.  However, the Court will deny the
motion in part as to Counts IV and VI.


1.    Contracts Clause Violation

In Count II of the complaint, the plaintiff alleges
that the defendants violated the Contracts Clause of Article I,
Section 10 of the United States Constitution by "impairing the
Obligation of Contracts."  The defendants argue that the
plaintiff has failed to allege a violation of the Contracts
Clause.  Moreover, the defendants argue that the plaintiff cannot
establish a Contracts Clause claim, as the defendants are
executive actors whose actions do not fall within the Clause's
purview.

The Court will dismiss Count II because it concludes
that the plaintiff has failed to establish a Contracts Clause
claim.  A Contract Clause analysis requires three threshold
inquiries: (1) whether there is a contractual relationship; (2)

whether a change in a law has impaired that contractual

relationship; and (3) whether the impairment is substantial.

Transp. Workers Union of Am., Local 290 v. SEPTA, 145 F.3d 619,

621 (3d Cir. 1998). The complaint contains no factual

allegations that reference a contractual relationship or the

manner in which such relationship was impaired, and therefore the

claim fails the pleading standard.

Moreover, to the extent that the plaintiff intends to

direct her Contracts Clause claim against the DOC's policies and

regulations,[9] such a claim fails because the defendants have not

exercised the legislative power of the state. See New Orleans

Waterworks Co. v. La. Sugar Refining Co., 125 U.S. 18, 30 (1888)

(holding that prohibition in Contracts Clause "is aimed at the

legislative power of the State, and not at the decisions of its

courts, or the acts of administrative or executive boards or

officers, or the doings of corporations or individuals"); see

also Cross Lake Shooting and Fishing Club v. State of La., 224

U.S. 632, 638 (1912) (same); Speck v. City of Phila., 2008 U.S.

Dist. LEXIS 2203, at *14 (E.D. Pa. Jan. 11, 2008) (finding no

claim under Contracts Clause because actions of executive agency

are not legislative or quasi-legislative).

Because the plaintiff cannot establish a Contracts

_____

[9]The plaintiff refers to numerous DOC policies throughout
her complaint. For instance, the plaintiff references an order
prohibiting inmate possession of UCC materials. Compl. ¶ 33.

Clause violation, the Court will grant the motion to dismiss as
to Count II of the complaint.

### 2.    Freedom of Expression and Access to the Courts

In Count III, the plaintiff asserts a claim titled
"Freedom of Expression/To Petition the Government for Redress of
Grievances."  Given the manner in which the plaintiff has labeled
Count III, the Court assumes that the plaintiff intends to allege
violations of both the First Amendment right to freedom of
expression and access to the courts.

Based on the plaintiff's complaint and the on-the-
record telephone conference described above, the Court
understands the plaintiff's freedom of expression claim to be
based on the defendants' failure to use her legal name in prison
records.  Tr. at 17.  The defendants argue that there is no First
Amendment right to have prison records reflect a legally changed
name.

The Court will grant the motion to dismiss as to the
plaintiff's freedom of expression claim, because the Court agrees
that the defendants' actions do not implicate a First Amendment
right.  Where a prisoner changes her name for personal rather
than religious reasons, the First Amendment does not require that
her prison records be changed to reflect the same.  See Spies v.
Voinovich, 173 F.3d 398, 406 (6th Cir. 1999) (finding no First

Amendment right to have prison records reflect legally changed name) (citing <u>Imam Ali Abdullah Akbar v. Canney</u>, 634 F.2d 339, 340 (6th Cir. 1980)); <u>Kirwan v. Larned Mental Health</u>, 816 F. Supp. 672, 674 (D. Kan. 1993) (holding First Amendment not implicated where prison officials refused to recognize prisoner's new name, which was changed for personal reasons).[10]

In addition, the Court will grant the motion as to the plaintiff's access to the courts claim.[11]  A First Amendment access to the courts claim may be brought either to challenge official action that is presently blocking a plaintiff from filing suit, or official action that has made it so that a claim can no longer be brought.  <u>Christopher v. Harbury</u>, 536 U.S. 403, 413-14 (2002); <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008). To establish an access to the courts claim, the plaintiff must identify a "nonfrivolous," "arguable" underlying claim for which she was denied access.  <u>Harbury</u>, 536 U.S. at 424.  This entails a pleading requirement, whereby the complaint "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" <u>Monroe</u>,

---

[10] The Court of Appeals for the Third Circuit has also addressed this issue in a non-precedential opinion.  <u>See</u> <u>Ali v. Stickman</u>, 206 Fed. Appx. 184 (3d Cir. 2006) (holding prisoner's desire to use legally changed name did not implicate First Amendment where not adopted or used for religious purposes).

[11]The right to access the courts derives from the First Amendment right to petition for redress of grievances.  <u>See, e.g.</u>, <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373-74 (3d Cir. 1981).

536 F.3d at 205-06 (citations omitted).

        The complaint does not reference any claim that the
plaintiff has been unable to assert, and it does not establish
how the plaintiff has been denied access to the courts.
Moreover, the plaintiff has not clarified her access to the
courts claim in subsequent communications with the Court.
Therefore, the claim fails the pleading standard and must be
dismissed.[12]

        Accordingly, the Court will dismiss Count III.


        3.   First Amendment Retaliation

        In Count IV, the plaintiff asserts a claim titled
"Retaliation for the Exercise of Rights under the First
Amendment."  During the on-the-record telephone conference with
the Court, the plaintiff clarified that she was referring to
retaliatory action that she faced as a consequence of filing
grievances against prison officials.  Tr. at 9-13.  Specifically,
the plaintiff alleges retaliation by her prison employers who
attempted to have her removed or have her wages reduced.  Tr. at
9.  In addition, the plaintiff alleges retaliatory action by her

_____

        [12]To the extent the plaintiff intends to assert an access to
the courts claim based on the policy barring inmates from
possessing UCC materials, the Court of Appeals for the Third
Circuit has explicitly approved this policy and rejected a
similar challenge based on an access to the courts theory.  See
Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008).

Unit Manager, Sylvia Pallott, who investigated the grievances and was responsible for the plaintiff's cell transfer.  Tr. at 10-12.

The defendants argue that the employer retaliation claim must be dismissed, because the plaintiff's employers are not defendants to this suit, and the named defendants had no personal involvement in the alleged retaliation.  In addition, the defendants argue that the retaliation claim based on the plaintiff's cell transfer must be dismissed, because the plaintiff was not transferred for a retaliatory purpose. Instead, the plaintiff had previously been located in an area intended for double-cell inmates, and the prison decided to maintain all single-cell inmates on a separate side of the prison.  Tr. at 20.

To establish a § 1983 retaliation claim, a prisoner must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that he suffered an adverse action at the hands of prison officials; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  A challenged action need not itself be unconstitutional to make out a retaliation claim, so long as it is "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (citations omitted).

13

With respect to the employer retaliation claim, the claim cannot succeed because the employers are not defendants to this action.  Moreover, § 1983 claims cannot be premised on a theory of respondeat superior.  Rather, the allegations in the complaint must demonstrate with particularity how each named defendant was personally involved in the allegedly unlawful conduct, either through participation or actual knowledge and acquiescence.  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  None of the nine defendants is alleged to have been personally involved in the employers' actions, either through participation or actual knowledge and acquiescence.

Even if the plaintiff were to establish personal involvement by the named defendants, the employer retaliation claim would fail because the plaintiff has not suffered any adverse action.  This element is satisfied by showing that an action "was sufficient to deter a person of ordinary firmness from exercising his rights."  Rauser, 241 F.3d at 333.  In this case, the plaintiff alleges that she ultimately "recovered the job and all lost wages."  Compl. ¶¶ 46-47; Tr. at 9-10.  Further, the plaintiff subsequently obtained a new job that she had previously sought, but which had been unavailable.  Id.  Therefore, the plaintiff cannot establish that she suffered any adverse action by her employers.

However, the Court will deny the motion to dismiss as

to the cell transfer claim.  The plaintiff engaged in
constitutionally protected activity by filing grievances.  See
Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (filing
complaints against prison officials protected by First
Amendment).  Moreover, the plaintiff has alleged an adverse
action.  Accepting the plaintiff's allegations as true, the Court
is satisfied that a transfer away from the showers and officers'
station to a less desirable location is sufficiently adverse to
satisfy the second prong of the Rauser test at the motion to
dismiss stage.

        Finally, to establish a causal link, a prisoner must
demonstrate that "his exercise of a constitutional right was a
substantial or motivating factor in the challenged decision."
Rauser, 241 F.3d at 334.  However, "the prison officials may
still prevail by proving that they would have made the same
decision absent the protected conduct for reasons reasonably
related to a legitimate penological interest."  Id.  The Court
finds the plaintiff's allegations sufficient to withstand a
motion to dismiss.  The plaintiff has pointed to a suggestive
temporal proximity between the protected activity and the cell
transfer.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271,
280 (3d Cir. 2000) (noting that suggestive timing is relevant to
causation analysis).  Whereas the plaintiff was housed in a
desirable cell location for over fourteen years, she faced a cell

transfer a few weeks after discussing her grievances with Ms. Pallott. Moreover, Ms. Pallot was responsible both for investigating the plaintiff's grievances and for initiating the cell transfer. The defendants' proffered explanation - that the prison sought to maintain all single-cell inmates in one area - does not address why the plaintiff was suddenly transferred after fourteen years.

Accordingly, the Court will deny the motion to dismiss as to the retaliatory cell transfer claim in Count IV.[13]

### 4. Substantive Due Process

In Count V, the plaintiff asserts a claim titled "Substantive Due Process." In the body of Count V, the plaintiff refers to both the Fifth and Fourteenth Amendments. The Court assumes that the plaintiff intends to assert a claim for violation of her Fifth Amendment rights as incorporated by the Fourteenth Amendment, as the Fifth Amendment binds only the federal government and the defendants are all state officials.

To prevail on a non-legislative substantive due process claim under § 1983, a plaintiff must prove that a particular

---

[13]The plaintiff also alleges that, pursuant to her cell transfer, she was required to carry her belongings to her new cell, despite limitations on the amount of weight that she can lift. As a consequence, her mattress "overtook" her and caused injuries. The Court finds that these facts fail to state a cognizable claim.

interest is protected by the Fourteenth Amendment, and the government's deprivation of that protected interest "shocks the conscience." <u>Chainey v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008). None of the plaintiff's allegations gives rise to a substantive due process claim. The plaintiff has not identified any right that forms the predicate of her claim, nor has she alleged the deprivation of such right. The Court will dismiss Count V.

### 5.   Eighth Amendment Violations

The plaintiff asserts a claim for "Cruel and Unusual Punishment" in Count VI of her complaint. Based on the complaint and the telephone conference with both parties, the Court understands this claim to assert violations of the Eighth Amendment as a result of (1) excessive force, (2) conditions of confinement, and (3) denial of medical care.

#### a.   Excessive Force

The plaintiff argues that Sergeant Andre Zimmer acted with excessive force in violation of the Eighth Amendment when processing the plaintiff for intake after a court appearance. Specifically, the plaintiff asserts that Mr. Zimmer ground her face into a metal window frame while conducting a body search. Compl. ¶ 40; Tr. at 7. The defendants argue that Mr. Zimmer's

conduct was *de minimis* and did not rise to the level of an Eighth Amendment violation.

In an Eighth Amendment excessive force claim, the pivotal inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). The inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002); Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000). Nevertheless, the Eighth Amendment does not protect against a *de minimis* use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted).

In analyzing whether a prison official has used excessive force in violation of the Eighth Amendment,

> courts look to several factors, including: (1) the
> need for the application of force; (2) the relationship
> between the need and the amount of force that was used;
> (3) the extent of the injury inflicted; (4) the extent
> of the threat to the safety of staff and inmates, as
> reasonably perceived by responsible officials on the
> basis of facts known to them; and (5) any efforts made
> to temper the severity of the forceful response.

Brooks, 204 F.3d at 106.

The Court will deny the motion to dismiss as to the plaintiff's excessive force claim. Accepting the plaintiff's

allegations as true, the Court cannot conclude at this stage that Mr. Zimmer applied *de minimis* force that was appropriate under the circumstances and not of a constitutional dimension. However, the Court deems this to be a close question, and notes that "not every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Further, although the absence of injury is not dispositive of the inquiry, "the extent of an injury provides a means of assessing the legitimacy and scope of the force." Brooks, 204 F.3d at 108. The plaintiff has not alleged any physical injury arising from this incident. Nonetheless, the Court will allow the claim to proceed out of an abundance of caution.

The Court notes that the plaintiff has also alleged that on August 4, 2005, a "Sergeant and four guards" attacked the plaintiff in the course of seizing legal materials from her cell. Compl. ¶¶ 33-34; Pl.'s Pet. de Droit ¶ 4. To the extent that the plaintiff intends to assert an excessive force claim based on these allegations, the Court will grant the motion to dismiss because the claim is time-barred. The statute of limitations for a § 1983 claim in Pennsylvania is two years from the accrual of the cause of action. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). A cause of action accrues "when the plaintiff knew or should have known of the injury upon which [her] action is based." Id. (quoting Sameric Corp. v. City of Phila., 142 F.3d

19

582, 599 (3d Cir. 1998)).  In this case, there is no allegation
that the plaintiff was unaware of her injury at the time that the
incident occurred.  Moreover, the plaintiff did not file her
complaint until June 28, 2010, almost five years later.
Therefore, the plaintiff's claim is untimely and will be
dismissed.

### b.  Conditions of Confinement

The plaintiff claims that Andre Zimmer violated her
Eighth Amendment rights by causing her to wait for over an hour
in a transport van pending intake into Graterford.  During that
time, the plaintiff endured hot temperatures and was not provided
fresh air, food, water, or restroom accommodations.  The
defendants argue that these conditions are not sufficiently
extreme to constitute an Eighth Amendment violation.  Moreover,
during the above-described telephone conference, the defendants
contended that the plaintiff, who was returning from a court
appearance, remained in the Allegheny County Sheriff's custody
during the intake process.  Tr. at 20.[14]

An inmate alleging an Eighth Amendment violation based
on conditions of confinement must show that the deprivation or
harm suffered was sufficiently serious so as to deprive her of

---

[14]The defendants' allegations regarding custody do not
appear in the pleadings.  Therefore, the Court will not consider
this issue in deciding the present motion.

"the minimal civilized measure of life's necessities." <u>Tillman v. Lebanon Cnty. Corr. Facility</u>, 221 F.3d 410, 417-18 (3d Cir. 2000) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)). This includes a demonstration that the conditions of confinement posed "a substantial risk of serious harm" to the plaintiff's health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The inmate must also show that the prison official acted with deliberate indifference. <u>Tillman</u>, 221 F.3d at 418.

The Court finds that the plaintiff has alleged a deprivation sufficient to withstand the motion to dismiss. Taking the plaintiff's allegations as true, the Court cannot conclude that the plaintiff was not deprived of her "basic human needs." <u>See</u> <u>Tillman</u>, 221 F.3d at 418. However, the plaintiff has not alleged that Andre Zimmer acted with deliberate indifference. Deliberate indifference requires a showing that "a prison official subjectively acted with a sufficiently culpable state of mind." <u>Tillman</u>, 221 F.3d at 418 (citing <u>Nami v. Fauver</u>, 82 F.3d 63, 67 (3d Cir. 1996)). This standard is satisfied when a prison official "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 825. The plaintiff has not alleged that Mr. Zimmer was aware of the conditions that the plaintiff faced while awaiting intake, and therefore the Court will grant the motion to dismiss as to this claim. However, the Court will grant the plaintiff leave to

21

amend her complaint to allege facts that would establish Mr.
Zimmer's actual knowledge of the risks in question.

c.   Denial of Medical Care

Finally, the plaintiff claims that the defendants have
violated her Eighth Amendment rights by exhibiting deliberate
indifference to her serious medical needs.  The plaintiff bases
this claim on the DOC's failure to provide her with gender-
appropriate clothing, which has led to "body disfigurements,
physical, psychological injuries."  Compl. ¶ 23.  The defendants
argue that this claim must be dismissed as it does not allege
personal involvement by any of the named defendants.  However,
the plaintiff later clarified during a telephone conference that
she intended to reference a DOC policy of denying gender-
appropriate clothing to transgender inmates.

The Supreme Court set forth the standard for reviewing
a prisoner's claims for inadequate or insufficient medical care
in Estelle v. Gamble, 429 U.S. 97 (1976).  "[D]eliberate
indifference to serious medical needs of prisoners constitutes
the 'unnecessary and wanton infliction of pain,' proscribed by
the Eighth Amendment."  Id. at 104 (citations omitted).

A medical need rises to the level of "serious" under
Estelle if the condition has been "diagnosed by a physician as
requiring treatment or one that is so obvious that a lay person

22

would easily recognize the necessity for a doctor's attention."
Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347
(3d Cir. 1987) (citations omitted).  The serious medical need
requirement under the Eighth Amendment contemplates "unnecessary
and wanton infliction of pain" where inadequate treatment would
cause an inmate to suffer "life-long handicap or permanent loss."
Id.

          The plaintiff's allegations do not rise to this level
of seriousness.  The plaintiff claims that she has been
"professionally diagnosed and medically treated" for
transsexualism.  Compl. ¶ 23.  Further, the plaintiff indicates
that part of her treatment includes hormone therapy, which the
DOC provides pursuant to a prior settlement agreement.  Tr. at
18.  However, the plaintiff has not alleged that gender-
appropriate clothing is also necessary to, or a component of, her
treatment.  Moreover, the Court is not convinced that a lack of
gender-appropriate clothing will lead to "life-long handicap or
permanent loss," rather than discomfort.  See Lanzaro, 834 F.2d
at 347.  The Court does not diminish the plaintiff's discomfort,
but concludes that it is not of a constitutional dimension.

          Having concluded that the plaintiff has failed to
establish a serious medical need, the Court need not determine
whether the plaintiff has alleged deliberate indifference.

          For the foregoing reasons, the Court will grant the

motion to dismiss as to the Eighth Amendment denial of medical care and conditions of confinement claims.[15]  The Court will also grant the motion as to the excessive force claim involving a "Sergeant and four guards."  However, the Court will deny the motion to dismiss as to the plaintiff's excessive force claim arising from the incident with Mr. Zimmer.

### 6.  Procedural Due Process

In Count VII, the plaintiff asserts a claim for violation of her procedural due process rights, as guaranteed by the Fourteenth Amendment of the United States Constitution.  In view of the above-described telephone conference with the parties, the Court understands this claim to be based on the seizure of the plaintiff's property on two separate occasions. First, the plaintiff's claim is based on an incident that occurred on August 4, 2005, when "a Sergeant and four guards" removed the plaintiff's legal materials from her cell.  Compl. ¶ 34; Pl.'s Pet. de Droit  ¶ 4.  Second, the plaintiff's claim is based on an incident that occurred during her intake into Graterford after a court appearance on October 21, 2009.  During intake, Andre Zimmer seized a tupperware bowl containing the

---

[15]As noted, the Court will permit the plaintiff to amend her complaint to the extent that she can establish deliberate indifference in conjunction with her conditions of confinement claim.

plaintiff's medication.  Tr. at 6.

The defendants argue that the plaintiff's claim relating to the August 4, 2005, seizure must be dismissed as time-barred.  Further, they argue that the claim relating to the seizure on October 21, 2009, must be dismissed because post-deprivation remedies were available that satisfied due process requirements.

The Court will dismiss the plaintiff's claim as it relates to the seizure of property on August 4, 2005.  As noted above, the statute of limitations for a § 1983 claim in Pennsylvania is two years from the accrual of the cause of action.  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).  A cause of action accrues "when the plaintiff knew or should have known of the injury upon which its action is based."  Id. (quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998)).  In this case, the plaintiff was aware of the injury when her property was seized, as evidenced by her subsequent filing of a grievance.  However, the plaintiff did not file her complaint until June 28, 2010, almost five years after the incident.[16] Therefore, the plaintiff's claim is untimely and will be

_____

[16]Even if the pendency of the plaintiff's grievances tolled the statute of limitations - a question on which the Court expresses no view - the plaintiff's claim would still be untimely.  Final review of the plaintiff's grievance terminated on January 26, 2006. Pl.'s Pet. de Droit, Ex. C.  The plaintiff filed her complaint four and a half years later.

dismissed.

The Court will also dismiss the claim as it relates to Andre Zimmer's seizure of the plaintiff's property on October 21, 2009. The unauthorized negligent or intentional deprivation of a prisoner's property by a state official does not violate procedural due process requirements "if a meaningful postdeprivation remedy for the loss is available." Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Where meaningful post-deprivation remedies are available, prisons are not required to provide pre-deprivation notice in order to satisfy due process. Id. The Court of Appeals for the Third Circuit has held that the DOC's grievance system constitutes an adequate post-deprivation remedy for purposes of this inquiry. Id. at 210; Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000). Therefore, the plaintiff cannot establish a violation of her due process rights.

For the reasons stated above, the Court will dismiss Count VII of the complaint.


C.    Count VIII: 42 U.S.C. § 1987

In Count VIII, the plaintiff asserts a claim under 42 U.S.C. § 1987, which she labels "Prosecution for Violation of Certain Laws." Section 1987 empowers federal officials to

26

prosecute violations of certain statutorily enumerated crimes. 42 U.S.C. § 1987. The defendants argue that § 1987 supports no private right of action. The Court agrees that § 1987 does not provide a private right of action, and will therefore dismiss Count VIII. See Carpenter v. Court of Common Pleas Media, 2008 U.S. Dist. LEXIS 58217, at *11-12 (E.D. Pa. July 30, 2008), *aff'd sub nom.* Carpenter v. Ashby, 351 Fed. Appx. 684 (3d Cir. 2009); Seneca Constitutional Rights Org. v. George, 348 F. Supp. 51, 54 (W.D.N.Y. 1972).[17]

D.   Count IX: Crimes of Violence Motivated by Gender

In Count IX, the plaintiff asserts a claim under 42 U.S.C. § 13981, which was a part of the Violence Against Women Act of 1994. The defendants argue that 42 U.S.C. § 13981 has been ruled unconstitutional and no longer provides a right of action. The Court agrees. Although 42 U.S.C. § 13981(c) explicitly authorized private enforcement, the Supreme Court struck down § 13981 and concluded that Congress lacked the constitutional authority to enact it. United States v. Morrison, 529 U.S. 598, 627 (2000); see also Amor v. Dodds, 2009 U.S. Dist. LEXIS 128500 (M.D. Pa. Sept. 25, 2009) (dismissing claim under §

---

[17]The Court of Appeals for the Third Circuit has addressed this issue in a non-precedential opinion. See Carpenter v. Ashby, 351 Fed. Appx. 684, 687 (3d Cir. 2009) (noting that § 1987 neither explicitly nor implicitly provides private cause of action).

13981 in light of <u>Morrison</u>).  Accordingly, Count IX will be dismissed.


      E.   <u>The Role of Individual Defendants</u>

      The defendants also contend that the claims must be dismissed because the plaintiff has not alleged personal involvement by the majority of the named defendants, and there is no respondeat superior liability under § 1983.  Because the Court will grant the motion to dismiss as to the claims outlined above, the Court need only address the issue of personal involvement with respect to the surviving claims.  The two claims that remain in this action are the plaintiff's First Amendment retaliation claim and her Eighth Amendment excessive force claim.

      As noted above, the allegations in a § 1983 claim must demonstrate with particularity how each named defendant was personally involved in the allegedly unlawful conduct, either through participation or actual knowledge and acquiescence. Section 1983 liability cannot be predicated on a theory of supervisory liability.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

      With respect to the plaintiff's retaliation claim, the plaintiff has not alleged personal involvement by any defendant other than Ms. Pallott.  Moreover, although the plaintiff has alleged in conclusory terms a "Custom/Policy change in

Plaintiff's cell placement," she has not set forth any facts that would demonstrate actual knowledge and acquiescence by the other named defendants. See Compl. ¶ 49. Accordingly, Count IV must be dismissed as to all defendants except for Ms. Pallott.

With respect to the Eighth Amendment excessive force claim, the plaintiff's allegations all center around Andre Zimmer. Her complaint contains no allegations that would establish the personal involvement of any other named defendants. The Court will dismiss the excessive force claim in Count VI as to all defendants except for Mr. Zimmer.

F.    Qualified Immunity

The defendants have also raised the doctrine of qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether a state official is protected by qualified immunity, a court ordinarily conducts a two-step inquiry. First, the court asks whether the defendant's conduct violated a constitutional or statutory right. Second, the court determines whether the constitutional or statutory right that was allegedly violated was

"clearly established."  <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006) (citing <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)).  The Supreme Court has clarified that the sequence prescribed in <u>Saucier</u> is not mandatory, and a court is permitted to use its discretion in deciding which of the two prongs should be addressed first.  <u>Pearson</u>, 129 S. Ct. at 818.

As noted above, the two claims that remain in this action are the plaintiff's First Amendment retaliation claim against Ms. Pallott and her Eighth Amendment excessive force claim against Mr. Zimmer.  Because the Court cannot determine at this juncture whether Ms. Pallott or Mr. Zimmer violated the plaintiff's constitutional rights, the Court will turn to the second prong of the <u>Saucier</u> inquiry.

In determining whether a right is clearly established, "the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Bayer v. Monroe Cnty. Children and Youth Servs.</u>, 577 F.3d 186, 192 (3d Cir. 2009).

With respect to the plaintiff's cell transfer retaliation claim, it is clearly established that the First Amendment prohibits prison officials from retaliating against an inmate who engages in constitutionally protected activity. Specifically, the First Amendment prohibits retaliatory action where a plaintiff files grievances or initiates a lawsuit against

30

prison officials.  See, e.g., Mitchell v. Horn, 318 F.3d 523, 530
(3d Cir. 2003) (noting that First Amendment prohibits false
misconduct charges against prisoner who files grievances);  Allah
v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (holding that
transfer to administrative segregation as punishment for filing
civil rights suit states retaliation claim).  The plaintiff has
alleged facts that fall within the ambit of Mitchell and Allah,
and therefore the Court finds the right in question to be clearly
established.

        With regard to the plaintiff's excessive force claim,
it is clearly established that the Eighth Amendment prohibits the
use of excessive physical force against a prisoner, even where
the prisoner does not suffer serious injury.  Smith v. Mensinger,
293 F.3d 641, 648 (3d Cir. 2002) (citing Hudson v. McMillian, 503
U.S. 1, 4 (1992)).  The Court of Appeals for the Third Circuit
has applied the prohibition against excessive force to cases
where physical force was employed against a handcuffed prisoner
who suffered only minimal injuries.  Id. (citing Brooks v. Kyler,
204 F.3d 102, 104 (3d Cir. 2000)).  The plaintiff's complaint
alleges similar facts, and therefore the Court concludes that the
plaintiff has alleged the violation of a clearly established
constitutional right.  The Court will therefore deny the motion
to dismiss as to these claims on the basis of qualified immunity.

G.   Eleventh Amendment Immunity

        The defendants also contend that the Eleventh Amendment
bars the plaintiff's remaining claims insofar as they seek
damages against the defendants in their official capacities.  The
Court agrees.  The Eleventh Amendment bars suits for damages
against state officers when they are sued in their official
capacities.  Hafer v. Melo, 502 U.S. 21, 27 (1991).  However, to
the extent that the plaintiff seeks damages against the
defendants in their individual capacities, the Eleventh Amendment
does not apply.  Id.  Moreover, the Eleventh Amendment does not
bar the plaintiff's claims for injunctive relief against the
defendants in their official capacities.  Koslow v. Pennsylvania,
302 F.3d 161, 168 (3d Cir. 2002) (citing Ex parte Young, 209 U.S.
123, 159-60 (1908)).  Accordingly, the Court will dismiss the
plaintiff's claims only insofar as they seek damages against the
defendants in their official capacities.


H.   Emotional Injury

        Finally, the defendants argue that the remaining claims
must be dismissed to the extent that the plaintiff seeks to
recover compensatory damages predicated solely on emotional
injury.  The defendants contend that the Prison Litigation Reform
Act precludes relief for emotional injury without a showing of
physical injury.

The Prison Litigation Reform Act ("PLRA") provides in relevant part that:

> [n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The Court of Appeals for the Third Circuit has interpreted § 1997e(e) to require a "less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury." Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir. 2003). With respect to the plaintiff's First Amendment retaliation claim, the Court agrees that the PLRA bars recovery for emotional injury, because the plaintiff suffered no underlying physical injury. With regard to the plaintiff's Eighth Amendment excessive force claim, the plaintiff has failed to allege physical injury, and therefore the PLRA similarly precludes recovery for emotional injury. However, the Court will grant the plaintiff leave to amend her complaint to the extent that she can demonstrate physical injury in conjunction with her excessive force claim. See Mitchell, 318 F.3d at 533.

The Court also notes that the PLRA only applies to claims for compensatory damages. The PLRA does not preclude recovery for nominal or punitive damages, which are typically predicated not on emotional injury but rather on the violation of constitutional rights. Mitchell, 318 F.3d at 533 (holding that §

1997e(e)'s physical injury requirement does not affect plaintiff's ability to seek nominal or punitive damages for violations of his constitutional rights). In addition, the PLRA does not apply to claims for injunctive or declaratory relief. Id. Therefore, the plaintiff is still entitled to seek nominal, punitive and injunctive relief.[18] Accordingly, the Court will dismiss the plaintiff's remaining claims only insofar as they seek compensatory damages for emotional injury.

I.   Additional Counts

During the aforementioned telephone conference with the parties, the plaintiff indicated that she would like to assert two additional counts, one under the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act of 2009, 18 U.S.C. § 249, and the other under the Administrative Procedure Act. The Court will permit the plaintiff to amend her complaint to assert these two additional claims.

---

[18]The plaintiff's complaint requests punitive but not nominal damages. However, the plaintiff need not specifically request nominal damages, as the Court will construe the catch-all request for "all other relief" as a request for nominal damages. See Mitchell, 318 F.3d at 533 n.8 (reading request for nominal damages into catch-all provision).

III. <u>Conclusion</u>

For the foregoing reasons, the Court will grant the motion to dismiss as to Counts I, II, III, V, VII, VIII and IX. The Court will also grant the motion to dismiss as to the employer retaliation claim in Count IV and the conditions of confinement and denial of medical care claims in Count VI. The Court will likewise dismiss the excessive force claim in Count VI based on the August 4, 2005, incident involving a "Sergeant and four guards." With respect to the surviving claims, the Court will grant the motion to dismiss as to all defendants except for Sylvia Pallott and Andre Zimmer. The Court will also dismiss the surviving claims insofar as they seek damages from the defendants in their official capacities. The Court will further dismiss the surviving claims insofar as they seek compensatory damages that are predicated solely on emotional injury. Finally, the plaintiff may amend her complaint to allege deliberate indifference and physical injury, if appropriate. The plaintiff may also amend her complaint to assert the two additional claims discussed above.

An appropriate order shall issue separately.