```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JESSICA ELAINE WOLFE          :    CIVIL ACTION
                              :
         v.                   :
                              :
JEFFREY A. BEARD, et al.      :    NO. 10-2566
```

MEMORANDUM

McLaughlin, J.                                    February 28, 2012

The plaintiff brings this suit alleging constitutional violations by staff at the State Correctional Institution at Graterford. The defendants moved for summary judgment. The Court will deny that motion.

Because the plaintiff is pro se, the Court considers both the plaintiff's response and any available arguments in her favor.

I.  Procedural History

The plaintiff in this case is Jessica Elaine Wolfe,[1] a self-described pre-operative male-to-female transsexual person. Her claims are based on events that occurred at SCI Graterford while she was incarcerated there. Since this suit began, the plaintiff has been released.

---

[1] The plaintiff's legal name was changed from James Elliott Wolfe to Jessica Elaine Wolfe. Consistent with the practice of this Court in prior cases involving this plaintiff, the Court will refer to the plaintiff in the feminine form. See, e.g., Inmates of the Pa. Dept. of Corr. v. Corbett, 484 F. Supp. 2d 359, 360 n.1 (E.D. Pa. 2007).

The plaintiff's original complaint included nine separate counts against a nine officials at SCI Graterford. Following a motion to dismiss, the Court held a telephone conference with the parties on October 28, 2010 so the plaintiff could explain her allegations. On December 9, 2010, the Court dismissed seven of the plaintiff's claims against all but two of the defendants. With Court permission, the plaintiff filed an amended complaint. After a second motion to dismiss, these two claims remained.

The plaintiff alleges retaliation for exercise of First Amendment rights by Unit Manager Sylvia Pallott, for transferring the plaintiff to a different cell after she filed a grievance, and an Eighth Amendment violation by Sargent Andre Zimmer, for excessive use of force during an intake search of the plaintiff.

II.  <u>Summary Judgment Record</u>

The facts described here are undisputed unless otherwise stated. Because the plaintiff is pro se, the Court treats the plaintiff's statements in her complaint and amended complaint, at her deposition, and in telephone conferences with the Court as part of the summary judgment record.

   A.  <u>The Eighth Amendment Claim</u>

On October 21, 2009, the plaintiff returned to SCI Graterford after spending several days at Allegheny County Prison in Pittsburgh in order to attend a hearing. The plaintiff entered the prison intake area wearing handcuffs. Zimmer

-2-

instructed the plaintiff to kneel on a chair.  She complied with this request.  While she was on the chair, Zimmer grabbed the plaintiff by the back of the neck and slammed her face into a metal window frame on the nearby wall.  Zimmer continued to press her face into the frame while conducting a pat-down search of her body.  Tr. 10/28/10 at 29-30; Am. Compl. ¶ 22.

This incident caused a lump on the plaintiff's forehead, stiffness in her neck for a week, and tenderness in her cheek.  Def. Mot, Ex. A, ("Pl. Dep.") 30-34; 38-42.  The plaintiff did not request medical attention for these injuries or report the injuries to a nurse she met with during the intake process.  Id. 42-43, 78-82.  Sometime after the search, the plaintiff experienced worsening migraine headaches and became sick after every meal and began spitting blood.  She was told that she suffered from high blood pressure, which she believes was caused by the stress of this event.  Id. 70-71; Am. Compl. ¶ 23.

   B.   The First Amendment Retaliation Claim

Because of her transgender status, the plaintiff was housed in a cell by herself while at SCI Graterford.  For approximately five years prior to April of 2010, the plaintiff lived in a double occupancy cell on the upper tier of her cell block.  In April of 2010, Pallott transferred the plaintiff to a single occupancy cell on the lower tier of the block.  Pl. Dep. 95-97; Def. Br., Ex. B ("Pallott Aff.") ¶¶ 4-5.

The plaintiff's new cell was farther away from the shower facilities and the guard station than her old cell. This distance made it more difficult for the plaintiff to ascertain if the showers were empty, and therefore safe for her to use. The new cell also required the plaintiff to walk to the shower in view of other inmates. In addition, because the new cell was on the lower tier, the plaintiff feared other inmates would be able to see her undress. Pl. Dep. 103-07; Tr. 10/28/10 at 12-13; Compl. ¶ 28.

In March of 2010, the plaintiff had filed a grievance against Bud Thomas, her supervisor in the prison paint shop. Pl. Dep. 109-12; Def. Br., Ex. E. The plaintiff alleges that her cell transfer was in retaliation for filing this grievance.

Pallott denies any knowledge of the grievance against Thomas at the time she made the transfer decision. She reports that she did not learn about that grievance until after this lawsuit was commenced. Pallott Aff. ¶¶ 7-8. Pallott explains that the plaintiff was moved from a double occupancy cell to a single occupancy cell so other inmates could be housed in the double cell. Id. ¶¶ 5-6.

A letter dated March 26, 2010, however, states that the plaintiff's grievance against Thomas "will be assigned to Unit Manager Pallott" for investigation. Def. Br., Ex. E. In addition, the plaintiff reports that she and Pallott discussed the grievance against Thomas sometime before Pallott told the plaintiff about the cell transfer. Pl. Dep. 109-12; Compl. ¶ 48.

III. <u>Analysis</u>[2]

    A.  <u>The Eighth Amendment Claim</u>

The Eight Amendment's prohibition against "cruel and unusual punishment" in the prison setting protects against "the unnecessary and wanton infliction of pain." <u>Fuentes v. Wagner</u>, 206 F.3d 335, 344 (3d Cir. 2000). Because some amount of force is often necessary in a prison, in an excessive force claim, the pivotal inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992). The inquiry is driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002); <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2000). Even when injury is not evident, contemporary standards of decency are violated when officers maliciously and sadistically use force to cause harm. <u>Hudson</u>, 503 U.S. at 9.

In analyzing whether a prison official has used excessive force in violation of the Eighth Amendment,

---

[2] A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). The moving party bears the initial burden of showing that there are no issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 250 (1986).

-5-

>courts look to several factors, including: (1) the
>need for the application of force; (2) the relationship
>between the need and the amount of force that was used;
>(3) the extent of the injury inflicted; (4) the extent
>of the threat to the safety of staff and inmates, as
>reasonably perceived by responsible officials on the
>basis of facts known to them; and (5) any efforts made
>to temper the severity of the forceful response.

Brooks, 204 F.3d at 106.

Although a plaintiff does not need to show injury, the Eighth Amendment does not protect against a de minimis use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). As the Supreme Court explained, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.

The Court finds that this is a very close case. In an abundance of caution, the Court declines to find that slamming the plaintiff's face into a metal window frame and holding it there with enough force to cause bruising, tenderness in her cheek, and stiffness in her neck, is a de minimis use of force. The Court also concludes that the plaintiff's testimony that she was in handcuffs and complying with Zimmer's request when he engaged in this force raises a genuine issue of material fact on whether the defendant unnecessarily and wantonly inflicted harm.

B.   The First Amendment Retaliation Claim

To establish a claim of retaliation for exercise of a constitutional right, a prisoner must demonstrate: (1)

-6-

that he engaged in constitutionally protected conduct; (2) that he suffered an adverse action at the hands of prison officials; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). A challenged action need not itself be unconstitutional to make out a retaliation claim, so long as it is "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (citations omitted).

  The plaintiff engaged in constitutionally protected activity by filing a grievance against Thomas. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). The defendants argue that the plaintiff cannot prevail on either of the other two elements. The Court finds that there are disputed issues of material fact on both of these elements, and thus summary judgment is not appropriate.

  In order to demonstrate "adverse action," a plaintiff must show that the defendant's behavior "was sufficient to deter a person of ordinary firmness from exercising his rights" to show adverse treatment. Rauser, 241 F.3d at 333. The Court believes that the plaintiff's allegations of the adverse nature of the transfer are sufficient to meet the second prong of the test. Occupancy in the new cell placed the plaintiff in physical danger from

other inmates, particularly while she showered. A reasonable jury could conclude that exposure to this threat would deter a person of ordinary fitness from exercising her First Amendment rights.

To establish the requisite causal connection in a retaliation claim, a plaintiff usually must prove either (1) an "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Although Pallott states that she was unaware of the grievance against Thomas at the time of the transfer decision, evidence in the record raises a disputed issue on this fact. A letter dated March 26, 2010, states that the grievance was assigned to Pallott for investigation and the plaintiff testified that she discussed the grievance with Pallott before the transfer order. Because the grievance was filed and assigned to Pallott a few weeks before the transfer order, and after the plaintiff had been living in the same cell for several years, a reasonable jury could conclude that the plaintiff has shown "unusually suggestive temporal proximity."

An appropriate order shall issue.